Good afternoon, my name is Theresa McLaughlin. Thank you, and I represent the Commissioner, and I would like to reserve five minutes of my time for rebuttal, please. The Commissioner's position is that the tax court majority in Lance was wrong, and that the tax court dissenters in the Seventh Circuit was right in striking down, and that the regulation actually is valid. The problem you have, and I've read the Seventh Circuit opinion pretty twice, and I hope carefully, you've got something in B, and you've got something in C, and it has much of the same language that you have in F, except in B and C you have a two-year period. What the Seventh Circuit said is that it would seem that if you adopt the position of your opponents, and also of the tax court, it would make B and C superfluous. But it would seem that you can flip that and say if you don't adopt their position, that F would be superfluous, because F doesn't have any type of limitation period. How would you respond to that? Well, first, the scope of relief that can be given under F is broader, because it applies to returns that declare that a tax is due in owing, but merely does not pay it, which is a lot broader than the relief you can get under subsections B or C, which involve only the case where the return has a I guess my question is just a logical one. Why would F be there if it has essentially the same language that B has? Why would Congress put an F in there if the only thing really different of any significance is not having a period of limitation? Well, my point was that the scope of relief that is available under F as a matter of discretion is a lot broader than the relief that you can get as an entitlement under subsection B and C. The factors are overlapping to a great degree, but under subsections B and C, the only relief you can get is if your return did not correctly state your tax liability. If there was a latent defect in it that But F says, under the procedures prescribed by the Secretary, if taking into account all of the facts and circumstances, it is inequitable to hold the individual liable for any unpaid tax or deficiency, and the taxpayer does not qualify for relief under B or C. It would seem that one of the reasons that a taxpayer would not qualify for relief under B or C is that that taxpayer was beyond the two-year period. And if that's the case, it would seem that F is saying, okay, if they really make a good case, they can show it. They're eligible to show it if they're beyond two years. Well, F relief is also broader in that, for instance, under subsection B, you can't know or have reason to know that the return understated the tax liability. And although that is one of the factors that the commissioner looks at in dispensing relief, it's not dispositive. And there's more flexibility, and so you might not have the kind of facts that would entitle you to relief. For instance, if you knew about it, you could still potentially qualify for relief under F. For instance, if you were subject to abuse by the spouse, not arising to the level of duress, but that's one of the reasons why you signed the return. So B is taking into account facts and circumstances. It's an equitable hold, the person liable. And the election of benefits then has to be made not later than two years after the date the secretary has begun collection activities. F is it's an equitable hold, the individual liable. And they otherwise don't qualify under B or C. So what else might it be other than they were outside two years? Well, there's a big difference between subscribing a return that you think is correct, but for a reason that your spouse has better knowledge of, you've understated your tax liability. That is the type of relief. That's the only way you can get relief under B or C is if your return is wrong. But under F, you can subscribe a return saying that you owe a big tax liability and not pay at all, and yet qualify for relief under subsection F. I thought the answer was going to be that it's not entitled relief under B and C is a substantive matter, not a question that you're not entitled to it because it's too late. In other words, it's substantively that we're looking at different things. Yes, and it is a lot broader just because of the point that it applies to underpayments of tax liability. It's opposed to merely understatements of tax liability. And we also think that the statute of limitations contained in both subsections B and C would really effectively be undercut if you read the statute as the tax court majority did in Lance, to say as if you might qualify for relief under B or C, but your request is merely too late. That really sets the statutes of limitations that are expressly contained in the first two subsections at naught. Ms. McLaughlin, moving beyond the statute of limitation question, if we agree with you that the Department had the right to impose a two-year statute through regulations, it seems to me that this is a terribly harsh result to not allow equitable tolling. I can give you some examples as I'm not going to cite the hypothetical that was cited before the Seventh Circuit, when that case was argued there. But can you respond to that, the harshness of denying equitable tolling? Sure. The commissioner thinks that there are several reasons why equitable tolling doesn't apply. And first, I'm not even sure it would be appropriate for this court to reach it because it never came up in the tax court. Well, it didn't come up because they got relief in the tax court. Okay. Well, all right, so there are several reasons why we think that the doctrine of equitable tolling doesn't apply. One thing that, one consideration that you look at is, is this the type of action that goes on between private parties? And it is not. It's purely a governmental and taxpayer relationship. Second, in Irwin, the Supreme Court, and it's come back to this a couple of times, and particularly in the Beggarly case, there's no equitable tolling where the text of the statute indicates that it was not intended. And here, just as was true in the case of the quiet title statute that was involved in the Beggarly case. But wasn't F intended to be a safety valve in some way? In some ways, but it's. So how would it be other than as to time? Well, other than as to time. Well, here the text of the statute has a built-in tolling. It doesn't begin to run until the commissioner begins collection activity. And that's just like the situation in Beggarly where the quiet title statute didn't begin to run until the discovery. If you're going to make a claim under B, you better have some equity on your side, and you're going to make it within two years. If you want to make a claim to C and you're unmarried, you better have some equity on your side. It has to be done within two years. If you're not eligible under B and C and you have some equity on your side, you can throw yourself on the mercy of the commissioner and ask for relief. What else other than time could that not be or could that be? Well, it could be that huge class of returns where the return is correct, the tax is correctly stated, but it is unpaid. Can I ask you this question? I made a mistake here. I don't have a reply brief with me in this case. There's a limit to how much it can carry. Did you deal with equitable tolling in your reply brief? Yes, we did, Your Honor. Okay. That's why it's not in the original brief. Right, because? Because they raised it in the answering brief. Yes, they raised it in the answering. I read it at the time, and believe me, it's not the simplest thing in the world. Remember, every simple thing. Now, why shouldn't we, since the tax court, obviously it had no reason to deal with equitable tolling because of the concession, that if there's no borrowers' tax limitations, she wins, it had no basis, reason to deal with it. Why shouldn't we simply remand it and say, look, maybe there ought to be a record on that, and we don't know what would appear, and let the tax court decide it in the first instance? Now, you'd like us to decide that it can't happen. What's wrong with doing that? Well, there's nothing wrong with doing that, Your Honor. That's great. Stop the answer. Okay, go on with the question. Okay. And I see I'm getting into my rebuttal time, but I just did want to touch on the remaining arguments we had. Do you want to end on that point, equitable tolling? You can finish the answer to him, Judge Greenberg. Yeah. What's the... Well, we pointed out in our reply brief that there were factual questions about it. But in your answer, are you giving up the ship that on your position that equitable tolling shouldn't apply here, period? No. We think... But the tax court didn't even get a chance to consider whether equitable tolling applied. And we think it applied, you know, because it did not apply not only because of the text and the built-in equitability of the limitations, period, but also because it's in the tax collection area, and the Supreme Court has repeatedly said that that is not an appropriate area for it, nor is it appropriate in... Are you saying we should not decide the equitable tolling issue here, whether it applies or doesn't apply? You could reach it and decide it, but I see nothing wrong with the trial court having the first crack at it since it didn't have the opportunity to do so in the first place. Thank you. We'll hear from Mr. Kissinger. May it please the Court. My name is Derek Dissinger, counsel for Ms. Minella, on behalf of Duquesne University School of Law Low-Income Tax Practicum. I would first like to address the distinction that Appellant made between underpayments and understatements. And the argument was that F is still broader than B and C because it applies to underpayments, even if the two-year statute of limitation is valid. The language of subsection F states that it applies to both unpaid taxes and efficiencies. And we cite the joint conference report on page 31 of our brief, which expressly states that the conferees intend that relief under F be available where there is both an understatement and an underpayment of tax. Since F must be available to understatements, it must be broader than the substantive criteria of B and C. And as the Court noted, there's not much of a difference between B and F. In the case of an understatement on the face of the statute, there are only two differences, knowledge and the statute of limitations. If this regulation and the statute of limitations is valid, it eliminates one of only two scenarios where a taxpayer would be able to seek relief under F where relief is unavailable in B. And this is an impermissible construction of this statute because it violates the language of F requiring the secretary to take into account all the facts and circumstances and use discretionary relief to avoid inequitable results. It also violates the language of the statute that relief be available under F in the case of a deficiency where relief is otherwise unavailable under B and C. The argument was also made that if time is treated as a factor under F, it somehow undermines the statutes of limitations in B and C, and that was also really the crux, I think, of the Seventh Circuit's opinion. But relief under F is discretionary. Whether the secretary considers all the facts and circumstances is in the language of the statute and is not. If a taxpayer would have qualified for relief under B, for example, but missed the statute of limitations and filed late, that taxpayer has lost the benefit of mandatory relief. Time is now treated as a factor under F where the secretary considers it along with all the other facts and circumstances, and that taxpayer has lost a significant benefit. One of the arguments that the Seventh Circuit has said is that you can't really say that this is unambiguous. F made fun of the tax court for using the oxymoron audible silence. Audible silence, right. But so if we're not sure what was meant by F, on the second prong of Chevron, why is this not at least a reasonable way of the commissioner cutting through this issue? You may not like it. Right. And you may have policy reasons against it. But what makes it unreasonable? For the reasons that were just stated about the language of the statute, and if we're going to Step 2, we're sort of saying that it's not clear on the face of the statute. But under Step 2, the legislative history becomes very relevant. And Congress started out with the old Innocent Spouse Relief Provision 6013E, which did not have a statute of limitations in it. The goal was to vastly expand Innocent Spouse Relief, and that's clear from the legislative history that Congress said we have a problem here. Too many spouses are being inequitably held liable under this statute. If this regulation is permitted to stand, relief under 6015 is significantly more limited than it was under the old statute. Any claim that's made after two years will not be considered on the merits. Did the old statute have the equivalent of what is currently an F? No. The old statute was essentially B with a grossly erroneous requirement. The deficiency had to be grossly erroneous for a taxpayer to qualify, but there was no statute of limitations under it. And the witnesses that testified before Congress, which is attached to our brief, made it rather clear that the circumstances that make a taxpayer innocent in the first place are also likely to cause a taxpayer to file for relief after two years. And, in fact, if I remember correctly, none of the witnesses that testified would have been able to receive relief under this statute because of the regulation. Ms. Minnell has conceded that but for this regulation she's an innocent spouse and she's entitled to innocent spouse relief. What's preventing her from obtaining relief is this regulation, and her circumstances do not seem to be uncommon among taxpayers that are otherwise going to be considered innocent spouses. And, Judge Fischer, you made the point about hypotheticals. It's not difficult to come up with many. A spouse that's in an abusive relationship, what makes her an innocent spouse is the fact that she may have been coerced into going along in this joint return. If that taxpayer cannot remove him or herself from that relationship for two and a half years after collection activity begins, the Internal Revenue Service will never even get to the merits of that claim. There's a bright-line rule, and I believe it violates the face of the statute, which requires a secretary to consider all the facts and circumstances and avoid inequity. And it's conceded that if this regulation is permissible, there are going to be many situations like Ms. Minnell where taxpayers who are otherwise going to be innocent spouses are continuing to be held liable because of the regulation. On the face of 6015 as enacted, all of these taxpayers will at least have the opportunity to have their requests decided on the merits. Let me ask you this question, though. And I remember I had a case on this exact point years ago where there's a regulation adopted by an agency pursuant to general powers to adopt regulations. It's, you know, they tend under Chevron to be upheld, and you all know the standards. But there's a particular tendency to uphold regulations where the power to adopt the regulation is specific to the statute involved. And under this statute, it starts off under procedures prescribed by the secretary. So doesn't this give you, you know, a tougher mountain to climb, that principle? Right. There's a delegation of procedural authority in this statute. And there are two points I'd like to respond to that. If a time period is a procedure, it still must be reasonable in the context of the statute. I understand that. But still, overall, it's a tougher road for you, isn't it? It is. It is. And subsection B also begins with under procedures prescribed by the secretary.  in the substantive criteria of the statute. Is the statute of limitations substantive or procedural? We argue that it is generally substantive. And the cases we cite admittedly are under the Erie Doctrine. That's not true generally in the law. Generally, for example, in a cause of action, the statute of limitations or exceptions is not part of the case, not part of the cause of action. It sometimes is. Right. That may have a consequence. Yeah, and then along the Erie line of cases, it's determined to be substantive. And the tax court in Hall, one of the concurring opinions, even made the point that, you know, this language may be in other areas of the code would permit a deadline. But this statute is unique, and it's clearly distinguishable from a statute that has no statute of limitations, where there's none. Like in Suala's holding, there was no statute of limitations. Is there any court of appeals we know about the Seventh Circuit that has dealt with this issue of what's the law? If my memory is correct, the Seventh Circuit is the only court of appeals that has already decided it. But it's pending in the Second Circuit. I believe it's pending in the Sixth Circuit. So the circuit courts are getting around to it right now. So right now, if we come in with a decision your way, we're going to create a conflict, I won't say among because there's only two, between the circuits. Correct. If the Third Circuit affirmed the tax court in this case, there would be a split of circuits, and there's going to be a few more circuit courts that are going to weigh in on the issue as well. What's wrong with the Seventh Circuit analysis? The Seventh Circuit, I believe, was particularly hung up on this undermining argument. At least their first point. It was. And for the reasons we stated, the fact that relief under F is discretionary, and a taxpayer that would otherwise qualify under B or C and misses the deadline, loses significant benefits. Under B and C, it appears that Congress essentially said, we're going to expand innocent spouse relief, and we're going to give you bright line rules that if you meet, relief is mandatory. You get it. But understatements outside of B and C and underpayments fall under F where relief is discretionary. So the fact that relief is discretionary and a taxpayer loses the benefit of de novo review under B, if a taxpayer would have qualified for C and misses the deadline, that taxpayer now has the burden of proving that he or she did not know of an understatement. For those reasons, it's hard to say that somehow treating time as a factor under F undermines the statutes of limitations in B or C, because it's not true, as the Seventh Circuit stated, that if you miss B, for example, because you filed, like Ms. Minnell did, two and a half years after collection activity begins, relief is not going to be automatic. And I think that's the point that the Seventh Circuit was particularly concerned with, that somehow a taxpayer that files eight years down the road and sat on his or her rights is going to get it guaranteed under F, and that's simply not the case. What if you are not eligible under B because you did know, but under F you would say, look, I did know, but I should have you allow me to be an innocent spouse for X, Y, and Z reasons. Wouldn't that be, you're not eligible under B, but you might be able to make an argument under F? That's correct. And as I stated earlier, the only differences really between F and B in the case of an understatement are going to be knowledge and the statute of limitations. And I get to that point because B has five criteria listed. In the case of an understatement, F has three of them, and the only differences are time and knowledge. And what you said would be correct. You would make the argument that I knew, but I was coerced. You were talking about legislative history. When 1613 was changed to 1615 and you added an F, what was the statement as to why F was added? The legislative history essentially made an acknowledgement that there are going to be circumstances outside of the mandatory relief sections where it would be inequitable to hold a taxpayer liable. And every indication in the legislative history is that F means exactly what it says. It's an equity test. All the facts and circumstances will be considered, and there will be a discretionary determination of whether it would be inequitable to hold a taxpayer liable. And statutes of limitation, as is the case with this regulation, generally do not exist in equity. And as the Seventh Circuit acknowledged, it's latches. As the Seventh Circuit said, you know, the trouble is you could take this out 10 years and later start making funds saying you could, in one case, you could take it out 121 years. Right. But isn't, if there in effect is a pronouncement via regulation by the commissioner that says the period of repose with regards to those who are not otherwise eligible under B and C is two years, what makes that unreasonable? I would say two things in response to that. One is that the statute says relief is available under this section where it's unavailable under B and C in the case of an understatement. And it eliminates one of the only two avenues that a taxpayer will ever be able to seek relief under F in the case of an understatement, and that is where the taxpayer had knowledge or did not file within two years. It violates the language of the statute that requires the secretary to consider all the facts and circumstances of the taxpayer's request. And it leaves out, which the tax court in Hall made the point, it also violates the directive to prevent inequity. And there will obviously be numerous cases where it would still be inequitable to hold the taxpayer liable because all the facts and circumstances of the request were not considered. And with regard to the Seventh Circuit's opinion, there is no fear if times treated as a factor that someone within the 10-year collection window eight years down the road files for relief, that that taxpayer is never going to be entitled to relief. Our argument is simply that the secretary must consider time as one of the factors in the directive to consider all of the facts and circumstances. I just had one more question. You raised, you're answering briefly this question of tolling. Do you see any reason, suppose we didn't know the Seventh Circuit's right, do you see any reason why we shouldn't leave it in because we don't need, you know, the court never considered it. I don't know what might come up with tolling. We do have a stipulation that if the regulation was invalid, she'd be entitled to relief. Right, so therefore the tolling was not an issue. Correct. But if we uphold, if we follow the Seventh Circuit, it will be. Correct, it will become an issue. Is there any reason why we shouldn't remand it and have a trial court opinion to start with? I believe since the stipulation has essentially said Ms. Bonnell is an innocent spouse and for the same reasons that she would be entitled to relief under the statute, she should be entitled to equitable tolling. Can you brief the issue and amicus brief the issue of equitable tolling? Does it say that she's entitled to equitable tolling? No, no. It says she would otherwise be entitled to innocent spouse relief. That's what I thought. And I think this is an equity section. It's a safety valve of the statute. And if she would be entitled to innocent spouse relief but for the regulation, I think she would also be entitled to equitable tolling for the same reasons because the reason she's an innocent spouse is she had no knowledge. You might be entitled to relief under B and C even if you knew long before the two years that you could get relief on her but you waited right until the end of the two years. But maybe you wouldn't be entitled to equitable tolling. They're not exactly determinants. They're not, but I believe that by entering the stipulation, I think the service has said, we believe you that you had no knowledge of the collection activity. Yeah, but that didn't cover the period once the two years was running. The lack of knowledge with respect to the understatement and underpayments did not. But I think by entering the stipulation, the IRS has also said, we believe you that your husband forged your signature and you didn't have knowledge of the collection activity as well. But if we're finding a fact, the case could be remanded to the tax court. But I think the third. Is equitable tolling a fact or a combination of fact and law or what? I'm sorry, I didn't hear you. What is it for the court? Is equitable tolling finding a fact or is that as a? That's a question of law, I believe, as to whether or not it would apply if the regulation is valid. Wouldn't it be a question of law as to whether there could be, but you'd have to look at the circumstances of the case to determine whether there is. That's correct. Next question of fact and law. Correct. Thank you very much. Thank you. Good. Thank you. I would like to address what the stipulation said and what it leaves up for grabs. The party stipulated that Mrs. Manella's request for relief was denied as untimely and that if they had considered whether she was entitled to relief under the rev proc, they would have concluded that she was entitled to relief. So then it says it's hereby stipulated that assuming that the treasury regulation is invalid and that her request was not time barred, she is entitled to relief. So it doesn't dispose of any equitable tolling argument. It was keyed to if the reg is invalid, you know, then she is entitled to relief. Okay. You want to finish that and then I'll have one more question for you. You want to finish your answer? I'm sorry. I interrupted you. I forgot what I was going to say. Join the club. I've been there. I talked with Mr. Dissinger about if we read F to have the same statute as B and they both essentially share the same language, then F would only be applicable when the taxpayer had knowledge. But the flip to that is why wouldn't Congress simply eliminate the knowledge requirement of B in F or simply state in F that if knowledge is found, then it's the commissioner's discretion to decide rather than leave it so open-ended. So it looks like Congress was wanting to do something more than just deal with knowledge or the lack thereof. Well, the grant of discretion is very broad. Pursuant to procedures developed by the secretary, if it's inequitable then the secretary can relieve the spouse of liability. And I think that one of the best formulations of this, of the difference between the relief under B and C on one hand and F on the other hand is the tax court dissenters, and they just talk about how relief under subsection F need only be substantively broader. It need not be temporally broader. Unless the court had any other question. Is the statute of limitations substantive or procedural? I mean, there's a liability case from our court in 07 that says it's substantive. I'll need another set of facts. What I am thinking of, Your Honor, is that the Seventh Circuit relied on this court's decision in Swallows Holding, which you may recall because I think you were on the panel. And the Seventh Circuit made the point that the delegation in the Swallows Holding case is very similar to the delegation here because we have not only subsection F, we have subsection H, which is a delegation to prescribe procedures. So you've got not only the language of subsection F itself, but that of subsection H. And there's also the Seventh Circuit's decision in Johnson v. Gonzalez, which says that this regulatory deadline is a procedure. So that's what we would rely on. All right. Thank you very much. Thank you, both counsel, for well-presented arguments. I would ask if counsel could get together with the clerk's office to have a transcript prepared of this oral argument. And is it okay if the government picks up that cost for that, the transcript? Sure. Okay. Thank you. We'll take a five-minute recess.